IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Maya Colette Bradford
_____
_____
_____

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

The County of Lexington
_____
_____
_____

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

Case No. _____
*(to be filled in by the Clerk's Office)*

Jury Trial:     ☑ Yes     ☐ No
*(check one)*

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Maya Colette Bradford |
| Street Address | 200 Abberly Village Circle |
| City and County | West Columbia, Lexington County |
| State and Zip Code | South Carolina, 29169 |
| Telephone Number | (803) 348-0931 |

**B.**   **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | The County of Lexington |
| Job or Title (if known) | |
| Street Address | 212 South Lake Drive |
| City and County | Lexington, Lexington County |
| State and Zip Code | South Carolina 29072 |
| Telephone Number | (803) 217-3000 |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title (if known) | |

|  |  |
|---|---|
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |

**C.     Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

|  |  |
|---|---|
| Name | Lexington County Administration Building |
| Street Address | 212 South Lake Drive |
| City and County | Lexington, Lexington County |
| State and Zip Code | South Carolina 29072 |
| Telephone Number | (803) 217-3000 |

## II.     Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐     Other     federal     law     *(specify     the     federal     law)*:

| ☐ | Relevant | state | law | *(specify,* | *if* | *known)*: |
|---|---|---|---|---|---|---|

| ☐ | Relevant | city | or | county | law | *(specify,* | *if* | *known)*: |
|---|---|---|---|---|---|---|---|---|

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*: <u>Interference under the ADA retaliation clause</u>

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) <u>October 29, 2024, December 16, 2024</u> <u>Oct 4th 2024 – Dec 20, 2024, Jan 6, 2025, Feb 24, 2025.</u> <u>Feb 27 – March 21st, 2025, March 24, 2025</u>

C. I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☑ is/are not still committing these acts against me.

4

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐    race _____

☐    color_____

☐    gender/sex _____

☐    religion _____

☐    national origin _____

☐    age. My year of birth is _____. *(Give your year of birth only if you are asserting a claim of age discrimination.)*

☑    disability or perceived disability *(specify disability)*
      <u>anxiety, PTSD, Narcolepsy with Cataplexy</u>, chronic neck pain

E.    The facts of my case are as follows. Attach additional pages if needed.

On the above-referenced dates, Defendant "The County of Lexington" failed to accommodate Plaintiff Maya Bradford including by denying her requested accommodations and causing the delay, breakdown, or failure to start of the interactive process of accommodation (Facts are continued in greater detail on attached ~~pages~~ pages.)

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

      <u>October 24, 2025</u>

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*
      <u>December 5, 2025</u>.

5

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐      60 days or more have elapsed.

☐      less than 60 days have elapsed.

**V.      Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

(1) Reinstatement to plaintiff's previous position with appropriate back-pay for the time since plaintiff was terminated (a a minimum of $50,000, for my hourly rate of $24.53).
(2) Granting of Plaintiff's requested and documentation-supported accomodations, including ability to work from home + modified schedule.
(3) Equitable / injunctive relief that the court deems proper and just, especially to ensure otherwise qualified employees with disabilities are not discriminated against by Defendant in the future. (see attached page titled "relief (continued)")

**VI.      Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.      For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: <u>03/05</u>          , 20<u>26</u>.

Signature of Plaintiff

Printed Name of Plaintiff    Maya Colette Bradford

200 Abberly Village Circle, Apt #232

West Columbia, SC 29169

**B.      For Attorneys**                    (803) 348-0931

Date of signing: _____, 20___.

Signature of Attorney        _____

Printed Name of Attorney     _____

Bar Number                   _____

Name of Law Firm             _____

Address                      _____

Telephone Number             _____

E-mail Address               _____

Compensary relief of $10,000 for emotional harm and mental anguish inflicted upon Plaintiff by Defendant's intimidating and retaliatory behavior engaged in without regard or concern for the emotional and mental wellbeing of a person Defendant knew suffered from psychiatric disabilities.

Plaintiff claims she is entitled to actual money damages via backpay through remedies suggested as being granted to employees who were discriminated against under the ADA. Comeensary relief is also suggested as remedy for acts of retaliation under the ADA's retaliation and interference clauses, according to the EEOC's Enforcement Guidance on Reasonable Accommodation and Undue Hardship, and the EEOC's Enforcement Guidance on Retaliation and Related Issues.

The Plaintiff, Maya Bradford, files this complaint the above-named Defendant and states as follows:

## Factual Allegations

1. Plaintiff, Maya Bradford, is a 31-year-old woman who suffers from multiple long-term impairments that substantially limit major life activities, including Generalized Anxiety Disorder, PTSD, and Narcolepsy with Cataplexy.

2. Defendant, the County of Lexington, is a government organization, its administration building is located at 212 South Lake Drive, Lexington, SC 29072.

3. All events relevant to Plaintiff's claims took place in the County of Lexington's Administration Building or via electronic communication such as texts and emails.

4. Plaintiff was employed at the County of Lexington as a Senior Applications Analyst for 8 months until she was terminated on March 24th, 2025.

5. At all relevant times, Dana Wilkerson was Chief HR Officer of the Defendant, the County of Lexington, and was acting with in the scope of that employment when she engaged in the below-referenced behavior.

6. This action is brought pursuant to the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

7. On November, 04, 2025, a Charge of Discrimination was filed with the EEOC. On December, 05, 2025, the EEOC issued a Notice of Right to Sue letter, a copy of which is attached as Exhibit 1.

8. Given Dana Wilkerson's position of power over Plaintiff as HR Director, Wilkerson had a duty to engage in the interactive process of accommodation with Plaintiff and grant those accommodations absent undue hardship.

9. Plaintiff's supervisor Jeff Brewer also had a duty to accommodate Plaintiff or to forward her requests for accommodation to someone who could.

10. Despite this duty, the Defendant failed to accommodate Plaintiff, retaliated against Plaintiff, and interfered with Plaintiff's ability to engage in protected activities under the Americans with Disabilities Act.

11. The defendant knew as early as July 30, 2024 that Plaintiff suffered from disabling mental health disorders, including severe generalized anxiety disorder and post-traumatic stress disorder, and what the limitations of these disorders were.

12. Under the oversight of at-the-time Deputy County Administrator Chris Murrin, Defendant successfully engaged in the interactive process of accommodation with Plaintiff, meeting with her in late July and early August, and exchanging letters and documents regarding Plaintiff's requested accommodations (see Exhibits 2, 3, and 5).

13. When Chris Murrin left the County of Lexington sometime between September 05, 2024 and October 04, 2024, the responsibility for continuing the interactive process and ensuring Plaintiff was accommodated fell to Dana Wilkerson.

14. Instead, Wilkerson caused the breakdown in the interactive process and delay of Plaintiff's accommodations by refusing to respond to multiple emailed communication attempts from Plaintiff from October 4th, 2024 to December 20th, 2024.

15. This includes a message sent on December 16th, 2024 where Plaintiff emailed Wilkerson informing her that she was suffering from increased emotional distress, worsening her psychiatric symptoms, was running out of leave, and desperately needed her accommodations (See Exhibit 6 for the referenced email).

16. After still getting no response, on December 20th, 2024, Plaintiff went to HR in person and asked the individual at the front desk to contact Wilkerson for her.

17. Wilkerson finally responded by calling Plaintiff and scheduling a meeting where she explained that they'd been busy since Chris Murrin left the county, which is why she hadn't responded until now, and that she just needed supporting documentation from Plaintiff in order for Plaintiff receive her requested accommodations.

18. Yet on more than one occasion, Dana Wilkerson ignored or rejected the supporting documentation that Plaintiff permitted or provided, all of which proved Plaintiff's status as a person with a disability covered by the ADA, including consensually released psychiatric medical records (Exibit 7, January 8th, 2025), a conversation with Plaintiff's assigned Vocational Rehabilitation specialist (Exibit 10, February 07, 2025), and a written letter from Plaintiff's therapist supporting her initially requested accommodation (Exibit 12, February 28th, 2025).

19. Also on more than one occasion, including on March 24th, 2025, Wilkerson ignored, rejected, refused to discuss or failed to follow up upon additional requests for accommodation, even after Plaintiff had provided the above-referenced instances of supporting documentation.

20. On October 29th, 2024 and December 16th, 2024, Plaintiff's supervisor Jeff Brewer also denied requests for disability accommodation by Plaintiff without explanation, discussion or suggestion of alternative accommodations and without forwarding them to someone who had the authority to respond (See Exhibit 4 for email exchange where this occurs).

21. In November, 2024, Plaintiff's supervisor Jeff Brewer and her team lead Shuyuan Wu provided a single accommodation to Plaintiff, a schedule modification to assist Plaintiff

as she began driving again for the first time after a car accident. This accommodation was later withdrawn as punishment on February 14th, 2025.

22. On January 3rd, 2025, specialists from Vocational Rehabilitation came to install equipment they'd ordered. One specialist, Tamer Naguib, had examined Plaintiff's workspace before on November 18, 2024. In both instances, Plaintiff followed the proper protocol for allowing visitors into the Technology Services department (visitors must show ID and sign in at the front desk), and accompanied her visitors the whole time.

23. Despite this, on January 6th, 2025, Dana Wilkerson pulled Plaintiff into a meeting with Plaintiff's supervisor, Jeff Brewer, where she subjected Plaintiff to unwarranted discipline and reprimand, accusing Plaintiff of breaking rules and protocols that she had not broken, and forcing Plaintiff to write down everything she'd "done wrong" by hand.

24. Dana Wilkerson also seemed angry in part that Plaintiff had worked with Vocational Rehabilitation in receiving these particular accommodations instead of reaching out to Wilkerson, despite the fact that (1) Vocational Rehabilitation had paid for all of the equipment, and (2) Dana Wilkerson had claimed only a few weeks ago on December 20th, 2024, to have been too busy to have even responded to Plaintiff's communications.

25. After this meeting, Defendant threatened Plaintiff with "immediate dismissal" for "insubordination" if Plaintiff spoke about the contents of this meeting with anyone who wasn't present.

26. Both the unwarranted discipline and the threat left Plaintiff distressed, ashamed, and fearful for her job. She felt too afraid to speak with anyone about what had occurred, including her Vocational Rehabilitation specialists, her therapists, or her family.

27. Plaintiff also no longer felt comfortable interacting with Wilkerson, but had no choice given Wilkerson's control over her accommodations and her job.

28. Nearly every private interaction with Dana Wilkerson after January 6th, 2025 resulted in Plaintiff being subject to belittling comments, interrogation and harsh scrutiny, despite having done nothing wrong. Plaintiff felt like she was being continually punished.

29. On January 27th, Plaintiff signed an authorization form to release medical records from the psychiatric clinic she attended as documentation to support her accommodation request. Plaintiff emailed Wilkerson asking if she'd received the medical records Plaintiff released (See Exhibit 7 for email exchange with clinic that was forwarded to Wilkerson).

30. Wilkerson did not respond to Plaintiff from January 27th, 2025 until February 07, 2025, when Plaintiff went to HR in person and asked the person at the front desk to ask Wilkerson if she had received the records.

31. Later that day, Wilkerson informed Plaintiff that she'd shredded the records instead of reviewing them. Wilkerson told Plaintiff to get a note from her therapist as supporting documentation instead.

32. On February 10th, 2025, Plaintiff emailed her therapist to ask her to write a letter supporting Plaintiff's accommodation request.

33. Before February, 2025, Plaintiff was unaware that she had Narcolepsy, but was aware that she occasionally suffered from excessive daytime sleepiness, and had reported it to her providers at Future Psych Solutions, as it occurred specifically whenever she was not able to access her ADHD medication, or when the medication occasionally became less effective due to hormonal changes. This information would have been available to Defendant had Wilkerson reviewed the records instead of shredding them.

34. Additionally, whenever Plaintiff made accommodation requests to work from home, as referenced in paragraph 20 and seen in Exhibit 4, because it was "unsafe to drive" this symptom of excessive daytime sleepiness (or "EDS") was what Plaintiff was referring to.

35. Starting February 13th, 2025, Plaintiff began to suffer from worsened episodes of EDS that the medication was no longer effectively treating, and developed severe cataplexy (complete muscle paralysis with postural collapse), even while driving.

36. On the morning February 24th, 2025, Plaintiff was informed by her team lead, Shuyuan Wu, that she could "no longer come in at 8:30 AM". Plaintiff learned later (on March 24, 2025) that this accommodation had been withdrawn as punishment for unsatisfactory performance (see Exhibit 8 for performance review where this is referenced).

37. Plaintiff's modified schedule accommodation had been initially effective, but her grandmother's illness and death had exacerbated her psychiatric conditions, and the manifestation and worsening of narcolepsy symptoms impacted her ability to drive.

38. Because the County refused to accommodate her with tele-work and took away her modified schedule, Plaintiff sought to go on Leave until she could get treatment.

39. Plaintiff was not yet eligible for FMLA, but the employee handbook included an alternative policy called "Physical Incapacitation & Personal Leave" (a scan of a page from the handbook referencing this policy has been included as Exhibit 9).

40. Plaintiff went by the Human Resources department and asked specifically to speak with her assigned HR Generalist about this policy, as she simply wanted to ask for clarification about it, and no longer felt safe interacting with Dana Wilkerson.

41. Despite Plaintiff's request, Wilkerson interceded and pulled Plaintiff into another closed-door meeting, claiming that a Generalist would not be able to answer Plaintiff's questions.

42. Just like Plaintiff feared, Wilkerson used this meeting to interrogate and shame Plaintiff as if she was being disciplined, asking leading questions as if trying to get Plaintiff to admit to wrongdoing, and making comments that seemed to minimize Plaintiff's symptoms, such as saying something like: "What, so you're a little sleepy?" incredulously after Plaintiff described being afraid when driving while struggling to stay awake.

43. Dana Wilkerson then railroaded Plaintiff into asking for leave through the Physical Incapacitation Leave policy that very day, pushing Plaintiff to share private and personal physical health details that she was not ready to share, then making her disclose that same information "exactly" as she'd told Wilkerson to the County Administrator Lyyn Sturkie in order to justify her leave request (See Exhibit 11 for redacted scan of letter).

44. During this interaction, Dana Wilkerson also told Plaintiff something to the effect of "Your job won't be protected while you're on leave". When Plaintiff reacted by only requesting two weeks of leave, Dana Wilkerson replied something to the effect of "Only two weeks? Are you sure you don't want to take more leave than that?", suggesting that Wilkerson was encouraging Plaintiff to take a longer period of leave, so that she would lose her job if her vacant position was filled.

45. Plaintiff requested Leave from February 25th to March 11th, which was granted, but due to Wilkerson's conduct and veiled threats, spent it distressed and fearing for her job (see Exhibit 15, an exchange between Plaintiff and her psychiatry nurse practioner, Monica Johnson, where Plaintiff expresses her mental state and fear that she's being discriminated against).

46. On February 27th, 2025 Plaintiff's therapist finally finished the letter supporting Plaintiff's accommodation request, and Plaintiff sent the letter to Wilkerson via email (see

Exhibit 12). From February 27th, 2025 to March 21st, 2025, Plaintiff received no
response from Wilkerson, nor did she receive her accommodations when she returned to
work on March 11th, despite having provided documentation as requested.

47. Plaintiff asked multiple people for help during this period, including two trusted
coworkers, the latter of whom Plaintiff said she would reach out to Dana Wilkerson and
Chelsea Miller for Plaintiff.

48. On Friday, March 21, 2025, Plaintiff finally went to her supervisor Jeff Brewer,
explaining the situation and asking for his aid in receiving her accommodations. After
commenting that Wilkerson was usually very prompt in responding to him, expressing
surprise that Plaintiff's experience was so different, Plaintiff's supervisor agreed to
message Wilkerson on Plaintiff's behalf.

49. Hours later on that same day, Plaintiff received an invite to a meeting on the following
Monday, March 24, 2025 with herself, her supervisor Jeff Brewer, and Dana Wilkerson.

50. Plaintiff mistakenly thought her supervisor had successfully reached out to Wilkerson
about the accommodations, and that the meeting was to discuss this.

51. On March 24th, 2025, Plaintiff emailed Wilkerson, requesting an accommodation to have
a support person present in the meeting, given Wilkerson's past treatment of Plaintiff.
Dana Wilkerson again denied this accommodation request outright due to it being
"against company policy".

52. Shortly after entering the meeting, Plaintiff learned she had been terminated. Though
Wilkerson claimed that "the County" had actually terminated Plaintiff all the way back on
February 12th, 2025, but had not wanted to bother Plaintiff about it while Plaintiff was on
Leave, which is why it was being addressed now instead.

53. Plaintiff had only been on leave from February 24th, 2025 to March 11th, 2025.

54. Plaintiff replied that these attendance issues could have been resolved if she'd received her requested accommodations on time, mentioning that they'd been delayed in part by Wilkerson failing to respond to her from October 4th to December 20th, 2024.

55. Dana Wilkerson replied by claiming Plaintiff "never provided supporting documentation" as the reason she hadn't responded throughout that period.

56. Plaintiff challenged Dana on this, stating that Dana Wilkerson had claimed being "busy" as the reason why she had not addressed Plaintiff's accommodations from October 4th to December 20th 2024. Wilkerson murmured something like, "Yeah" in response and either she or Jeff Brewer changed the subject.

57. The County offered Plaintiff a transition agreement stating that Plaintiff could continue to receive pay and health insurance if Plaintiff agreed to sign away her ability to sue under the Americans with Disabilities Act among other things (See Exhibit 13). Plaintiff did not sign it.

58. After the deadline had passed, Wilkerson sent Plaintiff an email granting her extra time to sign the transition agreement "out of concern" for Plaintiff (See Exhibit 14). Plaintiff did not respond nor did Plaintiff sign the agreement.

## Causes of Action

### *Count I: Failure to Accommodate*

Plaintiff incorporates by reference the facts alleged in paragraphs # through #.

59. Plaintiff was a qualified individual with a disability and was able to perform the essential functions required by her job as Senior Applications Analyst.

60. Plaintiff's disability and its limitations were well known by the employer. Through Plaintiff's own verbal testimony about her disabilites and limitations (July 2024), the initial letter Plaintiff submitted on July 30th, 2024, Plaintiff's submitted answers to Defendant's list of questions regarding her requested accommodation (October 4th, 2024), Plaintiff's consensually released medical records (January 27, 2025), Defendant's conversation with Plaintiff's Vocational Rehabilitation specialist on January 8th, 2025, and the note from Plaintiff's therapist supporting her initial accommodation request on (February 25th, 2025), Defendant was given more than sufficient information to accommodate Plaintiff.

61. With the above elements in mind, by failing to communicate with plaintiff regarding her accommodations on multiple occasions, rejecting several accommodation requests from Plaintiff outright without discussion or engagement in the interactive process, withdrawing needed accommodations as punishment for perceived poor performance, and rejecting or ignoring multiple forms of medical documentation, Defendant failed to accommodate Plaintiff's disability.

*Count 2: Interference*

Plaintiff incorporates by reference the facts alleged in paragraphs 39 through 44.

62. By issuing in their employee handbook a Physical Incapacity Leave policy that stated to be the sole option available for individuals ineligible for FMLA, and included restrictions such as being granted "only at the discretion of the County Administrator" and only being accessible to those who have completed probation, the County limited Plaintiff's and others' rights to invoke ADA protections, leading Plaintiff to believe this was her only

18

recourse for receiving leave, and that requesting it as a reasonable accommodation was not possible ("Enforcement Guidance on Retaliation and Related Issues", 2016).

63. Had Plaintiff been given the opportunity to discuss the policy with her HR Generalist, take time without pressure to think on her options, and do research, she may have had the chance to realize the opportunity to exercise her ADA rights. However, Wilkerson intervening to prevent Plaintiff from asking anyone else about the policy, then railroading Plaintiff into immediately taking the leave on that very day, constitutes interference.

Plaintiff incorporates by reference the facts alleged in Paragraphs 23 through 28.

64. By directly threatening Plaintiff's job if anything that happened in the unwarranted disciplinary meeting with Plaintiff was shared with anyone else (outside of Wilkerson and Brewer), terrifying Plaintiff and preventing her from reaching out to others to discuss if contents of the meeting were discriminatory, Wilkerson interfered with Plaintiff's ability to exercise her ADA rights.

65. As Plaintiff realized that every time she attempted to interact with Wilkerson, or anyone else with the knowledge to help Plaintiff, it would lead to an unwarranted closed-door interrogation full of shaming, scolding, minimizing and accusatory language from Wilkerson, Plaintiff became deterred from requesting additional accommodations and further discussing her already-requested accommodations, both wanting to avoid these interrogative meetings and feeling that anything else she requested would be rejected outright. This pattern of intimidating behavior by Wilkerson interfered with Plaintiff's ability to exercise her ADA rights.

19

***Count 3: Retaliation***

Plaintiff incorporates by reference the facts alleged in paragraphs 22 through 24.

66. While working with Vocational Rehabilitation to receive the workplace accommodations they'd purchased for her, Plaintiff was exercising her rights and engaging in protected activity under the ADA.

67. By punishing Plaintiff for working with Vocational Rehabilitation through unwarranted discipline and reprimand, Defendant took materially adverse action against Plaintiff.

68. The causal link between the protected activity and the materially adverse action establishes unlawful retaliation on the part of the Defendant.

Plaintiff incorporates by reference the facts alleged in paragraphs 48 through 58.

69. By requesting reasonable accommodations and asking her supervisor for aid in acquiring these accommodations, Plaintiff was engaging in protected activity under the ADA.

70. By deciding to terminate Plaintiff on March 21st, 2025, and doing so on March 24th, 2025 the County took materially adverse action against Plaintiff.

71. For Plaintiff to ask her supervisor for help in acquiring her accommodations, only for her termination meeting to be scheduled only hours later, a causal link is established between Plaintiff's protected activity and the materially adverse action taken by the Defendant.

72. Defendant's explanation that the County had chosen to fire Plaintiff on February 12th, 2025, but hadn't wanted to bother her while she was on leave, makes little sense given that Plaintiff's leave was only from February 24th to March 11th, leaving several days.

73. Defendant's transition agreement (Exhibit 13) including language that requests Plaintiff not sue under the Americans with Disabilities Act, and Wilkerson extending the deadline

for Plaintiff sign the transition agreement "out of concern for Plaintiff" when she'd

shown little concern for Plaintiff or permissiveness with deadlines while Plaintiff was

still employed by Defendant, also cast doubt on the given reason for the adverse action.

74. Therefore there is a casual connection between Plaintiff's protected activity and

Defendant's material adverse action, which establishes unlawful retaliation.